UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

January 3, 2007

Memo To Counsel Re: Environmental Integrity Project, et al. v. Mirant Corporation, et al.
Civil No. JFM-06-2249

Dear Counsel:

At the conclusion of the hearing held on December 21, 2006, I indicated that I would either issue a full opinion in February or a brief memorandum opinion on a more expedited basis. Having considered the arguments you made at the hearing and having reviewed again the memoranda you have submitted, I have concluded that the issues are rather clear and that a memorandum opinion should suffice. I hope that you understand that the form of the opinion does not suggest that I have not carefully considered the excellent arguments you have made.

Defendants' motion to dismiss will be granted, because the Maryland Department of the Environment ("MDE") has diligently prosecuted a civil action in the Circuit Court for Prince George's County to require compliance with federal and state opacity standards at the Chalk Point Electric Generating Facility.[1] *See* 42 U.S.C. § 7604(b)(1)(B). Defendants' request for attorneys' fees will, however, be denied because I find this action is not "frivolous, groundless, pursued in bad faith, or maintained after its baselessness became apparent." *See Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 931 (7th Cir. 2000).

*General Principles*

In general, courts undertake a deferential review of a state's enforcement action and presume that the earlier prosecution was diligent.[2] *See Cmty. of Cambridge Envtl. Health &*

---

[1] Because I am dismissing the action for lack of subject matter jurisdiction, I need not decide defendants' other contentions that this action is barred by *res judicata* and that Mirant Mid-Atlantic, LLC, has been improperly named as a defendant. On the second question, however, the record appears clear that Mirant Mid-Atlantic, LLC does not own or operate the Chalk Point facility.

[2] Plaintiffs concede that the consent decree filed in the Circuit Court for Prince George's County sought to require compliance with the same Clean Air Act standard, limitation, or order as does the present suit. Therefore, I need not decide that issue. *See generally Glazer v. Am. Ecology Envtl. Servs. Corp.*, 894 F. Supp. 1029, 1035 (E.D. Tex. 1995); *Conn. Fund for Env't v.*

*Cmty. Dev. Group v. City of Cambridge*, 115 F. Supp. 2d 550, 554 (D. Md. 2000) ("[D]iligence on the part of the enforcement agency is presumed."); *Glazer v. Am. Ecology Envtl. Servs. Corp.*, 894 F. Supp. 1029, 1037 (E.D. Tex. 1995) ("Diligence of the state's prosecution should be presumed."); *Ark. Wildlife Fed'n v. ICI Americas Inc.*, 842 F. Supp. 1140, 1147 (E.D. Ark. 1993) ("[T]he state agency must be given great deference to proceed in a manner it considers in the best interests of all parties involved."). The plaintiff bears the burden of overcoming this heavy presumption by offering "persuasive evidence that the state has engaged in a pattern of conduct in its prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 890 F. Supp. 470, 487 (D.S.C. 1995); *Conn. Fund for Env't v. Contract Plating Co.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986).

A plaintiff's mere unhappiness with a state prosecution and settlement does not overcome the presumption. *See Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1324 (7th Cir. 1992) (rejecting plaintiff's suggestion that diligent prosecution must be measured by its definition of success); *Ark. Wildlife Fed'n*, 842 F. Supp. at 1149 ("What [the citizen-plaintiff] characterizes as arbitrary decisions on the part of [the state enforcement agency] appear to the Court as reasoned cooperative efforts to remedy noncompliances with the permit."); *Conn. Fund for Env't*, 631 F. Supp. at 1294 ("The mere fact that the settlement reached in the state action was less burdensome to the defendant than the remedy sought in the [citizen suit] is not sufficient in itself to overcome the presumption that the state action was diligently prosecuted.").

Here, plaintiffs seek to rebut the presumption of diligence by asserting that (1) the process by which the consent decree came into being suggests a lack of diligence, (2) the penalties imposed by the consent decree are trivial and actually discourage compliance by making it cheaper to continue to violate opacity standards, (3) the consent decree does not require Mirant Chalk Point, LLC ("Mirant") to switch from oil to natural gas, and (4) the terms of the consent decree do not require compliance with federal and state opacity standards. None of these contentions have merit.

### *Allegedly Tainted Process*

Defendants concede that plaintiffs' 60-day notice letter was "the catalyst for an accelerated evaluation of emissions from fossil-fuel fired electric generating units at power plants in Maryland," and that following receipt of plaintiffs' notice MDE commenced negotiations with Mirant to address opacity violations at the Chalk Point facility. Further, it is undisputed that the consent decree thereafter negotiated and entered into between MDE and Mirant was filed in the Circuit Court for Prince George's County just one day before the plaintiffs could file suit pursuant to an order entered separately by the United States Bankruptcy Court for the Northern District of Texas.

These facts alone, however, are not sufficient to demonstrate that MDE did not diligently prosecute the violation of the opacity standards by negotiating the consent decree. Indeed, § 7604(b)(1) at least implicitly recognizes that citizens' notice may provide the catalyst for

---

*Contract Plating Co.*, 631 F. Supp. 1291, 1294 (D. Conn. 1986).

regulatory action and that regulatory agencies must be given 60 days to decide whether to take action. Thus, there must be other indicia that a consent decree was entered into collusively in order for a lack of diligence to be found on the basis of an allegedly tainted process. For example, in *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 890 F. Supp. 470, 478-79 (D.S.C. 1995) the court found that a state enforcement action and settlement did not constitute diligent prosecution where (1) a regulatory agency agreed, at the defendant's request, to pursue a judicial action rather than an administrative action as it normally did, (2) the defendant drafted the complaint and consent order, and (3) the defendant paid the filing fee. No such indicia exists in this case.

### *Relatively Small Monetary Penalties*

In *Laidlaw* the court opined that "the amount of the civil penalty must be high enough to insure [sic] that polluters cannot simply absorb the penalty as a cost of doing business." *Id*. at 491-92. On reconsideration, however, the court emphasized that "the economic benefit issue was a factor, but was by no means the only factor, upon which the [earlier] decision rests." *Id*. at 499. The court went on to say that its finding of no diligence reflected the "peculiar facts" presented. *Id*. Therefore, *Laidlaw* cannot be read as mandating an economic benefit analysis in all cases.

Further, economic benefit analyses aside, the fact that state proceedings result in the imposition of minimal penalties is not itself a basis for finding that the state prosecutions were not diligent. *See Cmty. of Cambridge*, 115 F. Supp. 2d at 554; *Ark. Wildlife Fed'n*, 842 F. Supp. at 1148; *see also Clean Air Council v. Sunoco, Inc.*, No. Civ. A. 02-1553, 2003 WL 1785879, at *6 (D. Del. Apr. 2, 2003). That is particularly true where the consent decree requires the defendant to incur substantial capital costs in complying with its terms and where the state court retains jurisdiction to enforce the decree. Both of these conditions exist in the present case. Moreover, the decree permits the state court to issue injunctive relief to assure that Mirant complies with the consent decree's terms. Thus, if (as plaintiffs speculate) Mirant would have an incentive to pay the penalties imposed by the decree rather than convert its operations to natural gas (as the decree requires), were Mirant to follow that course, MDE could obtain an injunction requiring the conversion. If Mirant were to then violate the injunction, the state court could impose monetary penalties upon it for contempt well in excess of the monetary penalties provided in the decree itself.

### *Alleged Absence of Requirement to Use Natural Gas*

Plaintiffs contend that the consent decree does not require Mirant to use natural gas because paragraph 4(b) requires that Mirant switch to natural gas only after it installs certain equipment that Mirant is not required by the decree to install. That contention appears to be based upon a misreading of the decree. Paragraph 4(a) expressly provides that "Mirant shall burn natural gas in Units 3 and 4 for 95% of their heat input during the Ozone Season" beginning on May 1, 2007, and paragraph 4(b) requires Mirant to burn natural gas outside the Ozone Season in the event that certain shortfalls occur during the Ozone Season.

### *Alleged Failure to Require Compliance With Opacity Standards*

At certain points in their argument plaintiffs seem to suggest that the "requiring compliance" element of defendants' subject matter jurisdiction defense is separate and apart from the "diligent prosecution" element of that defense. If that is plaintiffs' position, it lacks merit.

Although some courts have not inquired into whether a consent decree "requires compliance" with applicable regulatory standards, at least two courts have done so. In *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District*, 382 F.3d 743, 760 (7th Cir. 2004), the Seventh Circuit opined that a court should not accept "at face value . . . the potentially self-serving statements of a state agency and the violator with whom it settled," and, after a rather close scrutiny, found that the consent decree was insufficient. In *Clean Air Council*, 2003 WL 1785879, at *5-6, the court, while considering the "requiring compliance" issue, indicated that the relevant question is whether the regulatory prosecution was "'totally unsatisfactory,' not whether it required the remedy which the [plaintiffs] would have preferred."

It appears to me that the standard of review enunciated in *Clean Air Council* is the proper one because the inquiry into whether a consent decree is reasonably designed to require a polluter's compliance with applicable standards is part and parcel of the inquiry into whether state regulatory authorities have diligently prosecuted an action against the polluter. Accordingly, the views and actions of the regulatory authorities are entitled to deference. In any event, in this case plaintiffs' arguments that the consent decree does not require compliance with applicable federal and state opacity standards are unpersuasive.

First, for the reasons previously stated in this memorandum, the fact that the monetary penalties imposed by the consent decree are relatively modest does not demonstrate the insufficiency of the decree.

Second, plaintiffs erroneously rely upon a sentence in the declaration of George S. Aburn, Jr., the Director of the Air and Radiation Management Administration of MDE submitted in support of defendants' motion to dismiss, to establish the inadequacy of the decree. In that sentence Aburn states "[t]he Department expects that use of natural gas will eliminate opacity violations during the [O]zone [S]eason and that implementation of the enhanced combustion practices and technology will significantly reduce opacity exceedances in the non-[O]zone [S]eason." (Aburn Decl. ¶ 8, Ex. 4 to Mem. Law Supp. Defs.' Mot. Dismiss.) According to plaintiffs, Aburn thereby admits that violations of the opacity standards would occur during the non-Ozone Season. In making that contention, plaintiffs confuse "exceedances," the word used in Aburn's affidavit, with violations. Under applicable Maryland regulations there are some "exceedances" that do not constitute violations.

Third, plaintiffs appear to misread at least one MDE regulation, contending that it excuses emissions violations occurring 10% of the facility's total operating time when, in fact, it excuses emissions violations occurring only six consecutive minutes or less in any sixty minute period during "load changing, soot blowing, startup, or adjustments or occasional cleaning of control equipment." Md. Code Regs. 26.11.09.05(A). In any event, to the extent that plaintiffs disagree with MDE about how the latter's regulations should be read, I must give appropriate deference to MDE's expertise, particularly in light of the fact that Maryland's opacity standards are more stringent than federal standards. Likewise, plaintiffs' attack against an MDE

4

enforcement policy, set forth in Technical Memorandum 90-01, arguably permitting exceedances occurring more than 10% of operating time in any given quarter, does not raise an issue appropriate for me to address in this litigation. That policy is not expressly incorporated into the decree, and, if plaintiffs believe it to be unlawful, they should challenge it in a separate proceeding. This is particularly true because paragraph 29 of the decree is more stringent than MDE's enforcement policy, imposing a penalty of $1,000 per day for exceedances that occur over 5% of operating time during any quarter until June 1, 2009. Thus, for the present, plaintiffs' contention concerning the enforcement policy is entirely academic.[3]

      For all of these reasons, I find that MDE diligently prosecuted Mirant's violations of the opacity regulations when it negotiated and obtained approval of the consent decree in the Circuit Court for Prince George's County. Accordingly, the action will be dismissed for lack of subject matter jurisdiction.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Very truly yours,

/s/

J. Frederick Motz
United States District Judge

---

[3] MDE points out that the consent decree also provides substantial benefits as to environmental concerns other than compliance with opacity standards. I need not decide whether I may properly take these benefits into account in resolving the diligent prosecution issue.